IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DRAKE JAMES LEORIS JR., | ) |
| Plaintiff, | ) |
| v. | ) No. 18-CV-02575 |
| CHICAGO TITLE LAND TRUST COMPANY AND JEAN M. LEORIS, | ) Judge John J. Tharp, Jr. |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Drake James Leoris, Jr. brought suit seeking a declaratory judgment that he is the sole beneficiary of Illinois Land Trust No. 50677T. He named as defendants Jean M. Leoris, the putative co-beneficiary, and Chicago Title Land Trust Company, the trustee.[1] In the alternative, Leoris, Jr. has sought an accounting for Jean's share of the trust property expenses. Accordingly, Jean counterclaimed seeking, first, a declaratory judgement that her beneficial interest is valid, and second, damages for Leoris, Jr.'s conversion of the trust property. Both parties have moved for summary judgement on their declaratory claims. For the reasons discussed below, both motions are denied.

BACKGROUND

On December 2, 1977, Drake Leoris, Sr., the plaintiff's late father, executed Trust Agreement No. 50677T (the "Trust Agreement"). Compl. ¶¶ 1, 4, ECF No. 1. The agreement named Leoris, Sr. as the sole beneficiary and First National Bank of Skokie as the trustee of a land trust comprising a two-story building located at 622 Laurel Avenue, Highland Park, Illinois.

---

[1] Chicago Title Land Trust Company is a nominal defendant which has been joined for the sole purpose of aiding in the recovery of relief. *See* Mem. Op. & Order 3, ECF No. 13. As of this order, Chicago Title Land Trust Company has not appeared in the case.

*Id.* ¶ 4. Subsequently, Chicago Title Land Trust Company became, and remains, the successor trustee. *Id.* ¶ 2.

By its terms, the Trust Agreement conveys legal and equitable title of the trust property to the trustee while reserving with the beneficiary the rights to direct the trustee in its dealings with the title, to manage and control the property, and to receive any rental or dispositional proceeds. Compl. Ex. A, ECF No. 1. The agreement deems these rights to be personal property and permits their assignment as such. *Id*. Two subsequent assignments by Leoris, Sr. give rise to this controversy.

On September 16, 1998, Leoris, Sr. lodged an assignment with the trustee naming his son, Leoris, Jr., as a beneficiary in joint tenancy. Compl. Ex. B, ECF No. 1. The assignment included the power of direction, thereby obliging the trustee to act, as provided in the Trust Agreement, "upon the written direction of Drake Leoris and Drake James Leoris, Jr." *Id*.

Years later, on March 27, 2008, Leoris, Sr. lodged a second assignment with the trustee, assigning to his wife (and Leoris, Jr.'s stepmother), Jean, a fifty percent interest in the trust. Compl. Ex. C, ECF No. 1. This assignment also included the power of direction. *Id*. Leoris, Jr. received a certified copy of the assignment on or about May 7, 2008. Compl. ¶ 14, ECF No. 1. Leoris, Jr. now seeks to void this assignment.

Following Leoris, Sr.'s 1998 assignment to Leoris, Jr., both father and son jointly managed the trust property, which consists of first-floor office space and two second-floor apartments. Leoris, Jr. Suppl. Aff. ¶ 2, ECF No. 55. Leoris, Sr. and Leoris, Jr. used the first-floor office space to benefit their respective real estate brokerage and legal practices. Answer to Countercl. ¶ 12, ECF No. 43. The second-floor apartments were leased to residential tenants. *Id*. This arrangement remained until July 13, 2005, when Leoris, Sr. underwent a craniotomy to

remove a non-malignant brain tumor. Compl. ¶ 12, ECF No. 1. After the surgery, Leoris, Sr.'s involvement with the trust property declined. Drenk Aff. ¶¶ 5-6, ECF No. 56-2.

In Leoris, Sr.'s post-surgery absence, Leoris Jr. assumed all managerial duties of the trust property. *See* Compl. ¶¶ 23-24, 26, ECF No. 1; Answer to Countercl. ¶ 15, ECF No. 46. The 2008 assignment to Jean did not change this. Nor did it induce Leoris, Jr. to discontinue remitting fifty percent of the rental proceeds to his father. Compl. ¶ 25, ECF No. 1.

Instead, Leoris, Jr. entertained the prospect of undoing Jean's assignment. On or about May 9, 2008, Leoris, Jr. questioned Leoris, Sr. regarding the assignment to Jean. Leoris, Jr. Aff. ¶ 9, ECF No. 56-1. According to Leoris, Jr., his father could not recall signing it, characterized it as a mistake, and expressed an intent to correct it. *Id.* Then, in December 2010, Leoris, Jr. gave his father a form assignment to have him obtain from Jean the authorization necessary to reassign her interest in the trust property back to Leoris, Sr. *Id.* ¶ 10. Although on several occasions between 2011 and 2015 Leoris, Sr. purportedly proclaimed to be seeking Jean's authorization, authorization was never received. *Id.* ¶ 11. Leoris, Jr.'s effort to have Jean reassign her interest ceased in the fall of 2015 when Leoris, Sr. told his son that Jean had refused. *Id.* ¶ 12.

Leoris, Sr. passed away on October 6, 2017, at ninety-five years of age. Compl. ¶ 17, ECF No. 1. On October 31, 2017, for the first time, Jean demanded from Leoris, Jr. her share of the trust property's rental proceeds. Leoris, Jr. Aff. ¶ 14, ECF No. 47. This demand precipitated the present suit.

On March 26, 2018, Leoris, Jr. sued Jean seeking a declaratory judgment voiding the 2008 assignment, and in the alternative, an accounting for Jean's share of the trust property expenses.[2] He advances two grounds on which the assignment to Jean is invalid: (1) the

---

[2] As determined in prior rulings (ECF Nos. 13 and 30), jurisdiction is based on diversity.

assignment violates the Trust Agreement, the Illinois Land Trust Fiduciary Duties Act, and the Illinois Uniform Partnership Act; and (2) Leoris, Sr. lacked capacity to execute Jean's assignment or was coerced into doing so. Only the first claim has been presented for summary judgement. Similarly, Jean moves for summary judgement on her counterclaim seeking declaration that the 2008 assignment is valid.

## DISCUSSION

**I. Leoris, Jr.'s Declaratory Claim**

Leoris, Jr. advances three theories to argue that Jean's assignment is invalid: (1) the assignment violates the Trust Agreement itself, (2) the assignment violates the Illinois Land Trust Fiduciary Duties Act, and (3) the assignment violates the Illinois Uniform Partnership Act. Jean disputes the merits of these arguments but also asserts that Leoris, Jr.'s suit is untimely. The Court will start with that issue.

A. <u>Jean's Statute of Limitations Defense</u>

    1. Application of Section 13-205

Under Illinois law, the statute of limitations for the breach of a written contract is ten years. 735 Ill. Comp. Stat. 5/13-206. For "injuries done to property, real or personal . . . and all civil actions not otherwise provided for," it is five years. 735 Ill. Comp. Stat. 5/13-205. Leoris, Jr. argues that the relevant trust documents in this case are akin to a written contract, and therefore, the ten-year statute of limitations should apply. Because Leoris, Jr. filed his complaint on the day prior to the ten-year anniversary of the challenged assignment, presumably only the five-year statute of limitations would bar it.

Leoris, Jr. cites *C-B Realty & Trading Corp. v. Chicago & North Western Railway Co.* as his only support for application of the ten-year statute of limitations to this case. 289 Ill. App. 3d

892, 682 N.E.2d 1136 (Ill. App. 1975). *C-B Realty* sheds no light on this dispute, however; that case involved the interpretation of what was indisputably a written contract, so the court did not grapple with the legal issue Leoris, Jr. presents. *Id.* at 896, 682 N.E.2d at 1140. Here, the Court is concerned with whether an action relating to an extracontractual legal interest which arose by virtue of written trust instruments constitutes an "action on a written contract." 735 Ill. Comp. Stat. 5/13-206.

"[T]he fact that the origin of a cause of action may ultimately be traced to a writing has never been sufficient, standing alone, to automatically warrant application of the period of limitations governing written contracts." *Armstrong v. Guigler*, 174 Ill. 2d 281, 290, 673 N.E.2d 290, 295 (1996). Rather, the nature of the plaintiff's injury determines the appropriate statute of limitations. *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 413, 917 N.E.2d 475, 487 (2009). For instance, section 13-206 applies when the gravamen of the complaint rests on the nonperformance of a contractual obligation, but when a party claims an injury that arises by operation of the law, the action is no longer contractual in nature. *Armstrong*, 174 Ill. 2d at 291, 673 N.E.2d at 295.

Here, Leoris, Jr. is not alleging the nonperformance of a contractual obligation. Instead, he argues his beneficial interest in the trust is infringed by the operation of Jean's assignment. In general, the beneficial interest of an Illinois land trust is considered a personal property interest of the beneficiary. *In re Estate of Alpert*, 95 Ill. 2d 377, 382, 447 N.E.2d 796, 798 (1983). Leoris, Jr.'s interest is no exception. *See* Compl. Ex. A, ECF No. 1. (Per the Trust Agreement, "the interest of any beneficiary . . . shall be deemed to be personal property . . . ."). Thus, Jean's claim to fifty percent of the beneficial interest of the trust, pursuant to an allegedly invalid assignment, would infringe Leoris, Jr.'s personal property rights as the otherwise sole beneficiary. And

because section 13-205 applies to claims of "injury done to property, real or personal," the five-year statute of limitations applies to Leoris, Jr.'s claim. 735 Ill. Comp. Stat. 5/13-205; s*ee Toushin v. Ruggiero*, 2015 IL App (1st) 143151, ¶ 46, 38 N.E.3d 130, 142 (holding section 13-205 applied to allegations that defendant's actions prevented the plaintiff from receiving the benefits of owning a percentage of the beneficial interest in a land trust).

2. Waiver of Defense

Given that section 13-205's five-year statute of limitations applies to Leoris, Jr.'s claim, the Court turns to whether Jean properly raised the limitations defense. Leoris, Jr. argues that Jean's statute of limitations defense is waived because she did not include it in her answer but raised it for the first time in her motion for summary judgement. This fact, however, is not fatal to Jean's defense.

Leoris, Jr. is correct that parties must assert affirmative defenses in responsive pleadings. Fed. R. Civ. P. 8(c). The purpose of this rule is to prevent unfair surprise and afford the plaintiff an opportunity to respond. 5 Charles Allen Wright et al, Federal Practice and Procedure § 1270 (4th ed. 2021). However, "[t]he failure to plead an affirmative defense in the answer works a forfeiture only if the plaintiff is harmed by the defendant's delay in asserting it." *Carter v. United States*, 333 F.3d 791, 796 (7th Cir. 2003). *Venters v. City of Delphi* provides an example of such harm. 123 F.3d 956 (7th Cir. 1997). In *Venters*, the defendants raised a statute of limitations defense for the first time in their reply memorandum in support of summary judgement. *Id.* at 968. The reply was filed, however, on the eve of oral argument with discovery largely complete and trial only one month away. *Id.* Counsel for the plaintiff received a copy of the reply the following morning and was forced to read it on the way to court. *Id.* at 965. Following oral

6

argument, the court denied leave to file a sur-reply. *Id*. The Seventh Circuit found this provided the plaintiff virtually no time to respond and held the limitations defense waived. *Id.* at 969.

By contrast, Leoris, Jr. has not been victimized by such an eleventh-hour surprise. Unlike in *Venters*, Jean has not asserted her limitations defense in her reply brief but has asserted it in her motion for summary judgement as well as in her response to Leoris, Jr.'s motion for summary judgement. And Leoris, Jr. has had ample opportunity to respond. In fact, he has devoted portions of both his reply in support of his motion for summary judgement and his response in opposition to Jean's motion for summary judgement towards doing so. Yet despite this opportunity, Leoris, Jr. failed to identify any prejudice caused by Jean's tardy assertion of her limitations defense. Under similar circumstances, courts have declined to waive limitations defenses. *See, e.g.*, *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 392-93 (7th Cir. 2000); *Neuma, Inc. v. Wells Fargo & Co.*, 515 F. Supp. 2d 825, 850-51 (N.D. Ill. 2006). And here, the Court similarly concludes that Jean has not waived her statute of limitations defense by raising it for the first time in her motion for summary judgment rather than in her answer.

Leoris, Jr. seeks to avoid Jean's limitations defense by arguing that she has improperly raised the statute of limitations as a defense to a defense. It is true enough that the limitations defense which Jean raises is advanced as a defense against what Leoris, Jr. calls as his "First Affirmative Defense." Answer to Countercl. 13, ECF No. 46. Leoris, Jr. quotes *Stivers v. Bean* for the undisputed proposition that "[i]t is well established that statutes of limitations apply only to claims, not to defenses." 2014 IL App (4th) 130255, ¶ 36, 5 N.E.3d 196, 204. However, the *Stivers* court also provides guidance on how to differentiate counterclaims from disguised affirmative defenses: "an affirmative defense merely seeks to defeat [a] claim, whereas a counterclaim seeks affirmative relief over and beyond defeating [a] claim." *Id*. This same

distinction was discussed in *Ottaviano v. Home Depot, Inc., USA* in the context of declaratory actions. 701 F. Supp. 2d 1005, 1013 (N.D. Ill. 2010). There the court distinguished between offensive and defensive use of declaratory judgments before holding time-barred a plaintiff's claims for declaratory relief:

> [S]tatutes of limitations generally will not bar [a] claim for declaratory relief because statutes of limitations run against affirmative claims for relief, but not against defenses . . . . These principles do not apply here . . . . Plaintiffs do not seek a declaration as to the validity of a defense to a threatened action for coercive relief against them. Instead, plaintiffs' claims for declaratory relief simply request the court to declare that . . . plaintiffs are entitled to all the coercive relief they seek. This mere re-labelling of plaintiffs' claims for coercive relief cannot avoid the bar of the statute of limitations.

*Id.* at 1013-14 (quoting *Morris v. Manufacturers Life Ins. Co.*, No. EV 95-142-C H/H, 1997 WL 534156, at *10 (S.D. Ind. Aug. 6, 1997)).

Here, Leoris, Jr.'s "First Affirmative Defense" is nothing more than a legal interpretation of the Illinois Land Trust Fiduciary Duties Act which Leoris, Jr. advances to void Jean's assignment. If the Court were to agree with this "defense," such ruling would afford Leoris, Jr. the coercive relief his complaint seeks. In other words, notwithstanding Leoris, Jr.'s label, his argument is not a bona fide affirmative defense. It is simply a supplemental argument in support of his principal claim. As such, the statute of limitations defense is properly raised.

3. Accrual

In Illinois, "a statute of limitation begins to run when the party to be barred has the right to invoke the aid of the court to enforce his remedy." *Sundance Homes, Inc. v. Cty. of DuPage*, 195 Ill. 2d 257, 266, 746 N.E.2d 254, 260 (2001). In other words, "a limitation period begins 'when facts exist which authorize one party to maintain an action against another.'" *Id.* (quoting *Davis v. Munie*, 235 Ill. 620, 622, 85 N.E. 943, 944 (1908)). Commencement of the limitations

period is delayed, however, "until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused." *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill. 2d 72, 77, 651 N.E.2d 1132, 1135 (1995) (quoting *Jackson Jordan, Inc. v. Leydig Voit & Mayer*, 158 Ill. 2d 240, 249, 633 N.E.2d 627, 630-31 (1994)).

In this case, Leoris, Jr. knew or reasonably should have known he had been injured upon receiving a certified copy of Jean's assignment from the trustee on or about May 7, 2008. Compl. ¶ 14, ECF No. 1. This knowledge of the assignment is all Leoris, Jr. needed to pursue the declaratory relief he now seeks. In fact, the text of Jean's assignment, as well as the text of the Trust Agreement and his own assignment, are the only facts Leoris, Jr. marshals to argue—via various legal theories—that the assignment to Jean was void.

Leoris, Jr. contends, however, that he first became aware of his injury during the fall of 2015, when he was purportedly told by a lawyer that revocation of Jean's assignment by Leoris, Sr. would not be possible. Leoris, Jr. Aff. ¶ 12, ECF No. 56-1. This is also the timeframe in which Leoris, Sr. purportedly reported to Leoris, Jr. that Jean was unwilling to voluntarily reassign her beneficial interest back to Leoris, Sr. *Id*. Neither of these revelations are necessary predicates to the accrual of Leoris, Jr.'s limitations period. Leoris, Jr. does not need to know his preferred remedies—*i.e.*, revocation or voluntary reassignment—are inadequate to know he is injured. *See Fendon v. Bank of Am., N.A.*, 877 F.3d 714, 717 (7th Cir. 2017) ("[N]egotiations, requests for reconsideration, and new demands for action do not affect the time to sue on a claim that has already accrued."). It was knowledge of his injury that prompted his pursuit of those remedies in the first place. With knowledge of Jean's assignment, Leoris, Jr. could have sought judicial relief as early as May 7, 2008. Leoris, Jr.'s limitations period commenced then. It

9

expired on May 7, 2013. Leoris, Jr. did not file his complaint until March 26, 2018. Therefore, the declaratory claim on which he now seeks summary judgement is time barred.

B. <u>Leoris, Jr.'s Legal Arguments</u>

A finding that Leoris, Jr.'s declaratory claim is time-barred is sufficient to deny his motion for summary judgement, but he would fare no better even if his claim was timely. He makes three principal arguments.

First, Leoris, Jr. argues that Leoris, Sr.'s unilateral assignment to Jean violates the Trust Agreement because, at the time, the power of direction was held jointly by Leoris, Sr. and Leoris, Jr. and Leoris, Jr. never authorized the assignment. But the right to approve or deny the assignments of co-beneficiaries is not an inherent right of a land trust beneficiary's power of direction. The power of direction is merely the "authority to direct the trustee to convey, execute a mortgage, distribute proceeds of sale or financing, and execute documents incidental to the execution of a land trust." 765 Ill. Comp. Stat. 435/10. A description of the nature of land trusts provides broader context:

> The land trust is a device by which the real estate is conveyed to a trustee under an arrangement reserving to the beneficiaries the full management and control of the property. The trustee executes deeds, mortgages or otherwise deals with the property at the written direction of the beneficiaries. The beneficiaries collect rents, improve and operate the property and exercise all rights of ownership other than holding or dealing with the legal title. . . . While legal title to the real estate is held by the trustee, the beneficiaries retain "the power of direction" to deal with the title, to manage and control the property, to receive proceeds from sales or mortgages and all rentals and avails on the property. The trustee agrees to deal with the res of the trust only upon the written direction of the beneficiaries or the persons named as having power of direction . . . . The trustee has no duties in respect to management or control of the property or to pay taxes, insurance or to be responsible for litigation. The only specified duties upon the trustee are to execute deeds or otherwise deal with the property

> upon the direction of the beneficiary or other named authorized persons.

*Robinson v. Chicago Nat. Bank*, 32 Ill. App. 2d 55, 58, 176 N.E.2d 659, 661 (Ill. App. Ct. 1961) (internal quotations removed). In short, the power of direction is the right of a beneficiary to direct the trustee—as holder of the legal title to the trust property—in matters effecting legal title. The assignment of a beneficial interest, however, has no effect on the legal title. *See* Henry W. Kenoe, Kenoe on Land Trusts § 4.4 (1989) ("The trustee's acceptance of an assignment is merely a receipt and has no further implications.").

Leoris, Jr.'s land trust comports with these basic features. In its first paragraph, Leoris, Jr.'s Trust Agreement states that

> the interest of any beneficiary hereunder shall consist solely of a **power of direction to deal with the title** to said property and to manage and control said property as hereinafter provided, and the right to receive the proceeds from rentals and from mortgages, sales or other disposition of said premises . . . .

Compl. Ex. A, ECF No. 1 (emphasis added). It continues, six paragraphs later, by describing how the power of direction is to be exercised:

> [The trustee] will deal with said real estate only when authorized to do so in writing and that . . . it will on the written direction of [the holders of the power of direction] make deeds for, or otherwise deal with the title to said real estate . . . .

*Id*. So, in the specific context of Leoris, Jr.'s Trust Agreement, the power of direction is used as it is understood generally: to deal with matters of title and nothing more. Leoris, Jr.'s unsupported assertion that he may use it to veto his father's assignment to Jean is baseless.

Leoris, Jr.'s misunderstanding of the power of direction also contradicts a basic precept regarding the transferability of beneficial interests. Generally, land trust agreements can be freely amended. *Chicago Title Land Tr. Co. v. Qualizza*, 2019 IL App (1st) 181543-U, ¶ 14 (citing

11

*Dorman v. Cent. Nat'l Bank in Chicago*, 97 Ill. App. 3d 429, 432 (1981)). "Unless restricted by an agreement of the parties, amendments concerning the identity of the beneficiaries, the power of direction, or the allocation of proportionate interests in the trust may be effectuated by simple assignment without further documentation." *Dorman*, 97 Ill. App. 3d at 432; s*ee also* Henry W. Kenoe, Kenoe on Land Trusts § 4.4 (1989) ("Unless prohibited by the trust agreement, a beneficiary may assign his interest without a co-beneficiary's consent."). Notably, the severability of a power of direction from the rest of the beneficial interest is also included within the ambit of this rule. *Est. of Bowgren v. Comm'r*, 105 F.3d 1156, 1162 (7th Cir. 1997) ("The power of direction is a separable property interest that can be transferred or retained apart from the property interest represented by the rest of the beneficial interest.").

In this case, Leoris, Jr.'s Trust Agreement integrates these general principles. It contains no language suggesting their revocation. The Trust Agreement simply states that "the interest of any beneficiary . . . shall be deemed to be personal property, and ***may be assigned and transferred*** as such . . . ." Compl. Ex. A, ECF No. 1 (emphasis added); *see also Matter of Wildman*, 859 F.2d 553, 555 n.2, 557 n.6 (7th Cir. 1988) (concluding the same with a substantially similar trust agreement). There is no language in the Trust Agreement or its subsequent amendments suggesting a beneficiary's right to assign his or her interest is contingent upon approval by the power of direction holders.[3] *See* Compl. Ex. B, ECF No. 1. Accordingly,

---

[3] Leoris, Sr.'s 1998 assignment to Leoris, Jr. amends the original Trust Agreement. *In re Estate of Bork*, 145 Ill. App. 3d 920, 926, 496 N.E.2d 329, 333 (1986) ("The relationship between the trustee, the beneficiaries, and the holder of the power of direction is determined by the documents comprising the trust agreement, including any amendments to the trust agreement effectuated by assignment or otherwise."). The assignment, however, changes nothing other than the named beneficiaries, the allocation of interests between them, and the power of direction. Compl. Ex. B, ECF No. 1 ("[T]he foregoing assignment [is] subject to all the terms and provisions of said Trust Agreement.").

the Court finds that Leoris, Sr.'s unilateral assignment of a fifty percent beneficial interest in the trust to Jean did not violate the Trust Agreement.

Leoris, Jr.'s second argument is that the assignment to Jean alters Leoris, Jr.'s beneficial interest in violation of the Illinois Land Trust Fiduciary Duties Act. That Act, in relevant part, states:

> In exercising the power of direction, the holders are presumed to act in a fiduciary capacity for the benefit of all holders of the beneficial interest in the trust, unless otherwise provided in the land trust agreement. The beneficial interest shall be indefeasible and the power of direction shall not be so exercised to alter, amend, revoke, terminate, defeat, or otherwise affect or change the enjoyment of any beneficial interest.

765 Ill. Comp. Stat. 435/15. Leoris, Jr.'s focus is on the second sentence. He contends that because his beneficial interest is "indefeasible" and may not be altered or amended, Leoris, Sr.'s assignment to Jean violated the Act by changing Leoris, Jr.'s beneficial interest from a joint tenancy with his father to a tenancy in common with his stepmother. Leoris, Jr. places particular emphasis on the fact that the 1998 assignment granted him a "100% undivided interest" in joint tenancy, Compl. Ex. B, ECF No. 1, but after Jean's assignment, he was left with only an "undivided 50% interest," Compl. Ex. C, ECF No. 1. This logic is contrived.

Strictly speaking, it is true that two joint tenants are both 100% owners in a joint tenancy, not 50% equal owners. *Baillie v. Raoul*, 2019 IL App (4th) 180655, ¶¶ 21-22, 137 N.E.3d 240, 245. It is this feature of joint tenancies which gives rise to the right of survivorship among joint tenants. *Id*. But importantly, while "each joint tenant is regarded as the tenant of the whole for purposes of tenure and survivorship[,] . . . for purposes of alienation and forfeiture[,] each has an undivided share only." *Duncan v. Suhy*, 378 Ill. 104, 109, 37 N.E.2d 826, 828 (1941). In other words, while Leoris, Sr. and Leoris, Jr. were both 100% owners of the same joint *estate*, their

*interest* in that estate was still only 50% each. *See id.* at 829. Thus, despite Jean's assignment forcing a change in the form of Leoris, Jr.'s estate, his interest remained the same. Simply put, "[a] joint tenancy may be severed by a voluntary or involuntary conveyance of the interest of one of the joint tenants, thus changing the interests into a tenancy in common." *Chrystyan v. Feinberg*, 156 Ill. App. 3d 781, 783, 510 N.E.2d 33, 35 (1987). The Illinois Land Trust Fiduciary Duties Act does not change this.

The language of the Illinois Land Trust Fiduciary Duties Act that Leoris, Jr. appropriates for his purpose is meant for something else. In 1999, the Illinois legislature found existing case law was "unclear . . . as to whether the holders of the power of direction have fiduciary duties to the holders of the beneficial interest in land trusts." 765 Ill. Comp. Stat. 435/5. Thus, the purpose of the Act was "to clarify that holders of the power of direction are accountable to the holders of the beneficial interest in land trusts . . . ." *Id*. A fiduciary duty is breached whenever the power of direction is exercised to "affect or change the enjoyment of any beneficial interest." 765 Ill. Comp. Stat. 435/15. An effect or change may occur whenever a co-beneficiary's right to posses and use the trust property is deprived by the sale, conveyance, or partition of the same. *See Prince v. Marquette Bank*, 2019 IL App (1st) 180346-U, ¶ 38. For instance, in *Wolfe v. Wolfe*, the Illinois appellate court found that a sole holder of the power of direction breached a fiduciary duty by directing the trustee to convey the res of the trust to a third-party thereby depriving a co-beneficiary of her interest in the trust. 81 Ill. App. 3d 833, 837, 401 N.E.2d 1111, 1113 (1980). But this case is different. As has been already explained, Leoris, Sr. neither exercised his power of direction nor affected Leoris, Jr.'s beneficial interest when he executed Jean's assignment. Thus, the assignment falls outside the scope of the Illinois Land Trust Fiduciary Duties Act.

Finally, Leoris, Jr. alleges that the trust property was property of an implied-in-fact partnership between Leoris, Sr. and himself. As such, he argues the Jean assignment contravened Illinois' default partnership laws.[4] Because Leoris, Jr. raises this argument for the first time in his reply to his motion for summary judgement, it is waived. *Wonsey v. City of Chicago*, 940 F.3d 394, 398 (7th Cir. 2019). It is unpersuasive in any event. First, the law Leoris, Jr. asserts to support his argument no longer exists. Leoris, Jr. cites Illinois' Uniform Partnership Act despite its repeal on January 1, 2008. 805 Ill. Comp. Stat. 205/95 (repealed). Illinois' Uniform Partnership Act (1997) has taken its place. 805 Ill. Comp. Stat. 206/1206 ("On and after January 1, 2008, this Act governs all partnerships."). Second, the statute in effect—the Uniform Partnership Act (1997)—provides that

> [p]roperty acquired in the name of one or more of the partners, without an indication in the instrument transferring title to the property of the person's capacity as a partner or of the existence of a partnership and without use of partnership assets, is presumed to be separate property, even if used for partnership purposes.

*Id.* § 204. So even if a partnership did exist, because nothing in the trust documents evidences the partnership, the trust is presumed to be separate property, not partnership property.

---

[4] In the absence of a written partnership agreement, Leoris, Jr. argues that the nature of his and his father's joint management over the trust property evidences a partnership. He then cites the now-repealed Uniform Partnership Act's directive that "[a] partner's right in specific partnership property is not assignable . . . ." 805 Ill. Comp. Stat. 205/25 (repealed). Although this statutory provision is no longer in force, it was effective at the time Leoris, Jr.'s assignment was executed. *See* Compl. Ex. B, ECF No. 1. Contrary to the provision Leoris, Jr. cites, the Trust Agreement provides that any beneficiary may unilaterally transfer his individual interest in the trust. Compl. Ex. A, ECF No. 1. Therefore, the assignment to Leoris, Jr.—which incorporates the Trust Agreement—is inconsistent with the partnership law in force at the time of its execution. This fact itself militates against a finding of partnership. *Sajdak v. Sajdak*, 224 Ill. App. 3d 481, 488, 586 N.E.2d 716, 721 (1992).

**II. Jean's Declaratory Claim**

On cross-motion, Jean seeks summary judgement declaring her assignment valid. Although Leoris, Jr.'s motion for summary judgement declaring Jean's assignment invalid is denied, Leoris, Jr. raises other factual issues which must be resolved before determining the validity of Jean's assignment. Specifically, Leoris, Jr. contends that the Jean assignment was coerced and that Leoris, Sr. lacked capacity to execute Jean's assignment. Compl. ¶ 15, ECF No. 1. Assignments are subject to the same validity requirements as contracts. *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 387 Ill. App. 3d 85, 100, 898 N.E.2d 216, 230 (2008). Therefore, these factual allegations are material.

As an initial matter, Jean invokes Illinois' Dead-Man's Act to bar the factual allegations supporting Leoris, Jr.'s contentions of coercion and incapacity. But this Act is inapplicable. On its face, it only applies in "action[s] in which any party sues or defends **as the representative of a deceased person** . . . ." 735 Ill. Comp. Stat. 5/8-201 (emphasis added). Jean argues that she is a representative of Leoris, Sr. because "representative" is defined as "an executor, administrator, heir or legatee of a deceased person . . . ." *Id.* It may be true that Jean is her late-husband's heir, but she is not suing or defending in a representational capacity as such. Here, she is suing and defending in her individual capacity as an assignee. Therefore, she is not entitled to invoke the Dead-Man's Act. *See, e.g.*, *Mortimer v. Mortimer*, 6 Ill. App. 3d 217, 221, 285 N.E.2d 542, 545 (1972) (son-trustee denied application of Dead-Man's Act); *Andrews v. Matthewson*, 332 Ill. App. 325, 329, 75 N.E.2d 123, 125 (1947) (administratrix-assignee denied the same). The purpose of the Dead-Man's Act is to protect a decedent's estate from fraudulent claims or to protect the rights or statuses of heirs and legatees as heirs and legatees. *Coleman v. Heidke*, 291 Ill. App. 3d 670, 673, 684 N.E.2d 163, 166 (1997). In this suit, Jean plays neither role.

Turning then to the substance of Leoris, Jr.'s factual allegations, the only determination necessary for summary judgement is whether a genuine issue of material fact exists for trial. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004).

Leoris, Jr.'s allegations of coercion and incapacity emerge from the same set of disputed facts. Namely, that Leoris, Sr. suffered from diminished cognitive functioning and memory loss following his craniotomy in 2005 and that Jean took advantage of this weakened state. Leoris, Jr. Aff. ¶ 3, ECF No. 56-1. As evidence of this, Leoris, Jr. offers an affidavit from David Drenk, Leoris, Sr.'s attorney, describing conversations with Leoris, Sr. where Leoris, Sr. expressed both a lack of understanding as to why he signed the Jean assignment and a fear of Jean. Drenk Aff. ¶ 11, ECF No. 56-2. Leoris, Jr. swears to having a similar conversation with his father. Leoris, Jr. Aff. ¶ 9, ECF No. 56-1. Leoris, Jr. also contends his father's written correspondence with the trustee just prior to executing Jean's assignment evidences his father's incapacity. *Id.* ¶ 5. Finally, Leoris, Jr. claims Jean's assignment does not contain his father's handwriting, a quality he can distinguish. *Id.* ¶ 8.

The Court finds that these allegations raise a genuine issue of material fact as to the validity of Jean's assignment. For this reason, summary judgment is inappropriate.

17

\*     \*     \*     \*     \*

For the reasons set forth above, both cross-motions for summary judgment are denied.

Date: November 23, 2021

John J. Tharp, Jr.
United States District Judge

18